```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                        FRANKFORT
```

| | |
|---|---|
| RHONDA FRANKLIN,            ) | |
| )            Plaintiff,     ) | Civil Action No. 04-13-JMH |
| v.                          ) | |
| )                           ) | **MEMORANDUM OPINION AND ORDER** |
| GREENHECK FAN CORPORATION   ) | |
| )            Defendant.     ) | |

             **      **      **      **      **

This matter is before the Court on Defendant's motion for summary judgment [Record No. 35]. In addition to the plaintiff's response [Record No. 43] and the defendant's reply [Record No. 47], the plaintiff filed a supplement to her response [Record No. 48] to which the defendant replied [Record No. 50]. Having reviewed all the filings, and being otherwise sufficiently advised, the Court deems the matter ripe for decision.

**I.    BACKGROUND**

Greenheck Fan Corporation ("Greenheck") is a manufacturer of air movement and control products that has a manufacturing facility in Frankfort, Kentucky. Plaintiff, Rhonda Franklin ("Franklin"), was employed at Greenheck's Frankfort, Kentucky, facility from January 1997 through July 2003. While there is some dispute as to whether Franklin's full duty position was on the FSD or CRD line,

it is of little difference as both lines are considered Grade 3 positions which require employees lift 50 pounds on a regular basis.

Greenheck has several company policies that benefit employees who are injured on the job, unable to perform their regular job due to injury or illness, or unable to work for a period of time due to injury or illness. Greenheck's Occupational Return to Work Policy provides employees who are on temporary work restrictions due to an injury with ninety days of "light duty" work per injury. Greenheck also provides twenty-six weeks of short-term disability benefits, equal to 60% of the employee's average base salary, for employees who cannot work for health reasons not covered by workers compensation. Greenheck concedes that it is an "employer" as defined in the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601 *et seq.*, and, as such, is required to provide eligible employees with twelve weeks leave during any twelve-month period for serious health conditions that make the employee unable to perform his/her essential job functions. 29 U.S.C. §2611(4), 29 U.S.C. § 2612(a)(1)(D). In addition to the twelve-week leave permitted under the FMLA, Greenheck allows employees to take up to twelve months of medical leave before they are taken off the payroll and their benefits are terminated.

On or about October 31, 2001, Franklin requested permission to take a short leave under the FMLA due to shoulder and neck pain.

2

This request was granted. Franklin returned to work on November 7, 2001, and, due to a twenty-pound lifting restriction, was placed on "light duty" pursuant to Greenheck's Occupational Return to Work Policy. Franklin was assigned to the CRD line for this "light duty" because there was not enough light work on the FSD line to fill a forty-hour workweek. Because of continuing neck, shoulder, and work-related carpal tunnel problems, Franklin remained on "light duty" until February 4, 2002.

After exhausting the time available to her under Greenheck's Occupational Return to Work Policy, Franklin requested FMLA leave to commence on February 5, 2002. Franklin requested leave based on carpal tunnel, neck and shoulder pain. Greenheck granted Franklin's request. Franklin's leave of absence continued for almost nine months. During this time, Plaintiff had two surgeries to alleviate work-related carpal tunnel problems; the first surgery took place on April 8, 2002, and the second on July 30, 2002. The parties seem to agree that, while workers compensation coverage was denied for Franklin's neck and shoulder problems, the carpal tunnel injury was a work-related injury.

Franklin returned to work on October 23, 2002. Due to her carpal tunnel recovery, however, Franklin was once again assigned to "light duty." Franklin continued on "light duty" until her physician released her to work without restrictions on January 16, 2003. While working full duty, on March 20, 2003, Franklin injured

3

her finger in a work-related accident. Franklin's finger injury required her to be off for two weeks. This leave of absence was not counted against Franklin's FMLA leave as it was an absence based solely on a work-related injury. Franklin returned to work on April 7, 2003.

On April 18, 2003, however, Franklin notified Greenheck that, because of continuing neck problems, she need to take another leave under the FMLA. Franklin's request for leave indicated that she sought leave through June 18, 2003. Greenheck approved Franklin's request for FMLA leave noting that the leave was to commence on April 21, 2003, and would terminate on July 14, 2003. On June 10, 2003, however, Greenheck notified Franklin by letter that it had made a mistake in calculating her eligibility for FMLA leave and that, in fact, she had not been eligible for FMLA leave since April 25, 2002, because she did not meet the 1,250 hour requirement. The June 10, 2003, letter also advised Franklin that her short-term disability pay would extend through June 18, 2003. A letter dated June 13, 2003, notified Franklin that, under Greenheck's twelve-month medical leave policy, her employment would end on June 20, 2003. This end date was extended to July 4, 2003, in order to credit Franklin for the ten days she had taken off for her work-related finger injury. Franklin's physician released her to return to work on June 23, 2003, with restrictions. Accordingly, Franklin requested being assigned to "light duty" until her physician

4

released her to full duty. Greenheck denied this request on the basis that Franklin had exhausted the ninety days of "light duty" available to her under Greenheck's Occupational Return to Work Policy for her neck and shoulder injury.

Ultimately, Franklin's employment was terminated effective July 4, 2003, because she was not able to return to her full duty position on the FSD line, she had exhausted her "light duty" eligibility, she had exhausted her leave under the FMLA, and she had exhausted the twelve months of leave available to her under Greenheck's medical leave policy.

## II.     STANDARD OF REVIEW

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.

5

1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). When deciding whether there is enough evidence to overcome summary judgment, the evidence should be construed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885.

Given similar language and the stated purpose of KRS Chapter 344 to embody the federal civil rights statutes, including the Americans with Disabilities Act (ADA), the Court may look to federal case law in interpreting the Kentucky Civil Rights Act with respect to Franklin's claim of disability discrimination under KRS 344.040.

**III.   DISCUSSION**

A.   Count I - Kentucky Civil Rights Act

Plaintiff's first count alleges that Greenheck discriminated against her with respect to compensation, terms, conditions and

6

privileges of her employment under KRS 344 because it regarded or perceived her as having a disability.[1] The Sixth Circuit "interpret[s] Kentucky protections for the disabled consonant with the federal Americans with Disabilities Act." *Henderson v. Ardco, Inc.,* 247 F.3d 645, 649 (6th Cir. 2001) (citing *Brohm v. JH Properties, Inc.,* 149 F.3d 517, 520 (6th Cir. 1998).

The ADA prohibits discrimination by covered entities against qualified individuals with a disability. 42 U.S.C. § 12112(a). "Disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff is proceeding under subsection (C) of the definition.

There are two ways in which an individual may be "regarded as" having a disability: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly

---

[1] Plaintiff's complaint also states a disability claim based on Franklin's alleged status as a qualified individual with a disability who, with reasonable accommodation, could perform the essential functions of her job. In Franklin's response to Greenheck's motion for summary judgment, however, she only advances the "regarded as" prong of her claim. Moreover, the Court's April 1, 2005, order [Docket No. 40] granted Greenheck's motion in limine precluding Franklin from offering evidence or argument that she is an individual with an actual disability. Thus, this order only addresses Plaintiff's argument that Greenheck terminated her because of a perceived disability.

7

believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999). To make out a claim under the "regarded as" prong, "it is necessary that a covered entity entertain misperceptions about the individual--it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.* Additionally, the purpose of the "regarded as" prong is to cover individuals rejected from a job because of the myths, fears, and stereotypes associated with disabilities. *Id.* at 489-490.

There is no dispute that, during the time relevant to the allegations in the complaint, Franklin suffered from a physical impairment, specifically shoulder and neck pain. It is also clear from the record that Greenheck was well aware of such medical problems. The mere fact that Greenheck had knowledge of these problems, however, is insufficient to show that it regarded Franklin as having a disabling impairment. *See Hallahan v. The Courier Journal,* 138 S.W.3d 699, 708 (Ky. Ct. App. 2004). Moreover, a medical condition by itself does not constitute a disability under the statute. *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002). Only those conditions which substantially limit a major life activity meet the definition of disability, and an employer only runs afoul of the ADA when it

8

makes an employment decision based on such a disability. *Sutton,* 527 U.S. at 490. Additionally, temporary physical conditions are not generally considered substantially limiting. *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 938 (6th Cir. 2000).

Franklin relies on the major life activity of "working" to support her claim that Greenheck regarded her as disabled. *Sutton* makes clear that, "[w]hen the major life activity under consideration is that of working," the employer must regard the employee's disability as precluding her from working a broad range or substantial class of jobs. *Sutton,* 527 U.S. at 491. Thus, in order for Franklin to make a *prima facie* case of disability discrimination she will have to show that Greenheck regarded her impairment as a substantially limiting disability that precluded her from working a class of jobs or a broad range of jobs.

Franklin's response repeatedly states that Greenheck followed a "100% healed rule" which should be interpreted as treating Franklin as being incapable of working in any job at Greenheck and, therefore, in the entire class of manufacturing jobs. Greenheck, however, pointing to its "return to work policy" which specifically states that the company provides reasonable accommodations for permanently disabled employees, insists that it has no such rule. Additional support for Greenheck's position comes from Plaintiff's supplement to her response to defendant's motion for summary judgment [Record No. 48] wherein she illustrates the accommodations

9

made for other Greenheck employees. Finally, to further illustrate that Greenheck does not have a "100% healed policy," Benefits Specialist, Debbie Kasten, testified by affidavit that Greenheck currently accommodates two wheelchair-bound employees. It is difficult to reconcile how a company can have a "100% healed rule" yet accommodate two permanently disabled employees. The Court finds that Franklin has failed to present sufficient evidence that Greenheck regarded her impairment as a substantially limiting disability that precluded her from working a class of jobs or a broad range of jobs.

Franklin further argues Sixth Circuit precedent requires the question of an employer's subjective intent be presented to a jury rather than disposed of on a motion for summary judgment. *See Ross v. Campbell Soup Co.,* 237 F.3d 701, 706 (6th Cir. 2001) ("that question--*i.e.*, the employer's motive--is one rarely susceptible to resolution at the summary judgment stage"). In *Ross,* however, the plaintiff presented substantial proof that the employer relied on a misperception of disability and discriminatory animus in its decision about the plaintiff, such that motive was a factual issue. Here, Franklin has not even presented a modicum of evidence that Greenheck perceived her as disabled under the ADA or KRS 344. Where there are no genuine disputes of material fact, even a subjective issue such as motive is proper for resolution on summary judgment, since the Court is not required to weigh evidence, make

10

credibility determinations, or determine the truth of the matter. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003).

As stated above, the Court finds that Franklin has presented insufficient evidence to create a genuine issue of material fact concerning her claim that Greenheck regarded her as disabled. Accordingly, Count I of Plaintiff's complaint cannot withstand Greenheck's motion for summary judgment.

B.  Count II - Retaliation

In Count II of Plaintiff's complaint, Franklin states that Greenheck retaliated against her by terminating her for filing and pursuing workers compensation claims. Under Kentucky law, the "minimum" burden on a plaintiff claiming retaliation is to provide evidence she (1) "engaged in a statutorily protected activity," (2) "was discharged," and (3) "there was a connection between the 'protected activity' and the discharge." *Willoughby v. Gencorp, Inc.,* 809 S.W.2d 858, 861 (Ky. Ct. App. 1990) (internal citations omitted). The third element of the test requires a showing that the claim was a "substantial and motivating factor but for which the employee would not have been discharged." *First Property Management Corp. v. Zarebidaki,* 867 S.W.2d 185, 188 (Ky. 1993).

Clearly Franklin satisfies the first two elements of this test; she engaged in a statutorily protected activity, *i.e.,* filing

11

workers compensation claims, and she was discharged. However, the evidence in the record does not establish the third necessary element of a retaliation claim. As required under *Willoughby*, there must be "a connection" between the protected activity and the discharge. Franklin does not provide any evidence that such a connection existed.

In cases where there is no direct evidence of a causal connection, the causal connection of a *prima facie* case of retaliation must be established through circumstantial evidence. *Nguyen v. City of Cleveland,* 229 F.3d 559, 566 (6th Cir. 2000). Circumstantial evidence of a causal connection is "evidence 'sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.'" *Id.* at 566 (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 2000)). In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001).

Here, Greenheck was clearly aware of the protected activity. The "temporal proximity" element, however, poses more of a problem. Franklin finalized her carpal tunnel workers compensation settlement in November of 2002. Four months later, in March of

2003, Franklin suffered another work-related injury, this one to her finger. Franklin was discharged in July of 2003. This lapse of time is too long to create, by itself, an inference of causality. *Breeden,* 532 U.S. at 273-74. Furthermore, Franklin's response fails to point to any facts tending to show she was terminated for filing workers compensation claims. Franklin's unsupported speculation is insufficient to survive defendant's motion for summary judgment.

C.   <u>Count III - Wrongful Discharge</u>

Count III of Plaintiff's complaint seems to allege that she was discharged because she objected to violating the law in the course of her employment and that this discharge was contrary to public policy. Plaintiff attempts to elucidate this allegation in her response brief by contending that the Defendant's interference with her rights under the FMLA and KRS § 344, rights which establish public policy, creates her claim for wrongful discharge. Both the FMLA and KRS § 344, however, provide a specific structure for pursuing a claim for discharge. When a statute provides a structure for pursuing claims for termination, that statutory structure preempts a private wrongful discharge claim. *Hines v. Elf Atochem North America, Inc.,* 813 F. Supp. 550, 552 (W.D. Ky. 1993). Because both the FMLA and KRS § 344 provide a structure for employees to pursue when alleging violations, the statutes preempt wrongful discharge claims based on violations thereof.

Accordingly, Franklin's common law wrongful discharge claim cannot withstand the defendant's motion for summary judgment.

D.   <u>Count IV - Family Medical Leave Act</u>

Count IV of Plaintiff's complaint alleges that Greenheck interfered with Plaintiff's rights under the FMLA. Under the FMLA, "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve-month period ...[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of the employee." 29 U.S.C. §§ 2612(a)(1)(D). An eligible employee is defined as an employee who has been employed for at least twelve months by the employer and at least 1250 hours with such employer during the twelve-month period. 29 U.S.C. §§ 2611(2)(A). Under the FMLA, an employer is defined as "any person engaged in commerce or any industry or activity affecting commerce who employs 50 or more employees for each work day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. §§ 2611(4)(A)(i). Finally, an employer who interferes with an employee's rights under FMLA shall be liable to the eligible employee. 29 U.S.C. §§ 2616(a)(1). Therefore, to prevail on an interference claim, a plaintiff must establish that (1) she is an "[e]ligible employee," 29 U.S.C. §§ 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. §§ 2611(4); (3) the employee was entitled to leave under the Act, 29 U.S.C. §§ 2612(a)(1); (4) the employee gave the employer

notice of her intention to take leave, 29 U.S.C. §§ 2612(e)(1); and (5) the employer denied the employee benefits to which she was entitled. *See Arban v. West Publ'g Corp.,* 345 F.3d 390 (6th Cir. 2003). Greenheck argues that Franklin's FMLA claim should be dismissed because she was not eligible for leave under the FMLA at the time of her termination and, further, because she did not rely on Greeheck's miscalculation regarding her eligibility.

Franklin's April 18, 2003, request for leave indicated that she sought leave through June 18, 2003. Greenheck approved Franklin's request for FMLA leave noting that the leave was to commence on April 21, 2003, and would terminate on July 14, 2003. Greenheck concedes that a miscalculation was made and that, in fact, Plaintiff had not been eligible for FMLA leave since April 25, 2002, as that was the date when her FMLA ran out. Franklin had not worked 1,250 hours since that date. Greenheck, however, allowed Franklin to continue on leave for the remainder of the time stated in her request for leave, *i.e.*, June 18, 2003, pursuant to the company's short-term disability benefit program. Franklin was notified that her last day of short-term disability was June 18, 2003, and that, under Greenheck's twelve-month medical leave policy if she could not return to her full duty position on or before July 4, 2003, her employment would be terminated.

Franklin argues that regardless of whether she was *eligible* for FMLA leave, she was *entitled* to FMLA leave because Greenheck

15

approved her request, albeit mistakenly, through July 14, 2003. To support this argument, Franklin relies on a Department of Labor regulation that states, in part, if an employer confirms eligibility, it may not subsequently challenge it. 29 C.F.R. § 825.100(3)(d). Greenheck, however, correctly points out that virtually every court that has addressed this regulation has held it to be invalid as it impermissibly broadens the scope of the Act. See *Woodford v. Community Action of Greene County, Inc.,* 268 F.3d 51, 57 (2d Cir. 2001); *Dormeyer v. Comerica Bank-Illinois,* 223 F.3d 579, 582 (7th Cir. 2000); *Brungart v. BellSouth Telecommunications, Inc.,* 231 F.3d 791, 796-97 (11th Cir. 2000). Thus, Franklin's reliance on 29 C.F.R. § 825.100(3)(d) is misplaced.

Notwithstanding the invalidity of the regulation, the doctrine of equitable estoppel may provide Franklin the relief she desires. "The principle of [equitable] estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation." *Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 493-494 (8th Cir. 2002) (quoting *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 659 (8th Cir. 1992)); *see also Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 59 (1984).

The facts of the case *sub judice* fail to present a genuine issue of material fact which a reasonable jury could construe in

Plaintiff's favor. It is undisputed that Greenheck explicitly approved Franklin's request for FMLA leave through July 14, 2003. It is also undisputed that, after discovering its miscalculation, Greenheck ordered Franklin to return to work at full duty on or before July 4, 2003, or risk losing her position. Having corrected its own mistake, and having notified Plaintiff of said mistake, Greenheck removed the possibility that Plaintiff could have relied on the originally specified leave time. After learning of Greenheck's miscalculation regarding her FMLA leave, any reliance on Plaintiff's part would have been unreasonable. Construing the evidence in the light most favorable to the Plaintiff, it is impossible that a reasonable jury could find that Franklin either did or reasonably could have relied on the specified leave time to her detriment.

Accordingly, having failed to argue that she was in fact *eligible* for FMLA leave, and the Court having found that Franklin was not *entitled* to FMLA leave, Franklin's FMLA claim cannot withstand Defendant's motion for summary judgment.

**IV.    CONCLUSION**

Based on the foregoing discussion, **IT IS ORDERED** that Defendant's motion for summary judgment [Record No. 35] be, and the same hereby is, **GRANTED.**

17

This the 8th day of July, 2005.



Signed By:
*Joseph M. Hood*
United States District Judge